Bernard L. HAMMER, Plaintiff,

v.

**BOARD OF EDUCATION OF ARLING-
TON HEIGHTS SCHOOL DIS-
TRICT, NO. 25, Defendant.**

No. 94 C 6936.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 21, 1997.

Gregory X. Gorman, Gorman & Gorman, Chicago, IL, H. Candace Gorman, Law Office of H. Candace Gorman, Chicago, IL, for Bernard L. Hammer.

Andrea R. Waintroob, Franczek, Sullivan, Mann, Crement, Hein, Relias, P.C., Chicago, IL, for Arlington Heights School Dist., No. 25 and Board of Educ. of Arlington Heights School Dist., No. 25.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff, Bernard L. Hammer, filed a two count amended complaint against defendant, the Board of Education of Arlington Heights School District, No. 25, alleging employment discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The discrimination plaintiff alleged was based on plaintiff's status (Count I) and defendant's refusal to reasonably accommodate (Count II). Defendant has filed a motion for summary judgment on both counts pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing that plaintiff did not file his charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in a timely manner and that defendant did not violate the ADA. Plaintiff has also filed a motion for summary judgment on both counts pursuant to Rule 56 of the Federal Rules of Civil Procedure contending that defendant committed per se violations of the ADA. For the following reasons, both defendant's motion for summary judgment and plaintiff's motion for summary judgment are DENIED.

## STATEMENT OF FACTS [1]

Plaintiff, Bernard L. Hammer, was hired by defendant, Board of Education of Arlington Heights School District, No. 25, to work in its maintenance department in April 1979 and became a groundsman around March 1980. There is a dispute between the parties as to the requirements of the groundsman position. On January 29, 1991, plaintiff sustained a herniated disc while working for defendant. He was on medical leave due to

---

1. The following statement of facts comes from both parties' Local Rule 12(M) and (N) statements of material facts and accompanying exhibits.

the injury from January 30, 1991 until approximately March 26, 1991. When plaintiff returned to work, he was placed under light duty restrictions by his physician. Specifically, his doctor advised defendant in a letter that plaintiff could walk, sit, drive a truck but not on a rough road, lift nothing more than twenty-five pounds, and not drive a tractor. Defendant accommodated these restrictions by telling plaintiff that he did not have to lift anything heavy, that he did not have to perform work orders that were too heavy, and that a co-worker would lift anything plaintiff could not and perform work orders that plaintiff could not. At the time, plaintiff reported to Al Heinz, supervisor of maintenance, and Mr. Heinz was responsible for assigning plaintiff light duty work.[2] James Monroe, Mr. Heinz's supervisor at the time, does not remember any problems with plaintiff's working on light duty and was able to accommodate plaintiff's work restrictions.

In February 1992, plaintiff enrolled in a get fit program at Harper College. Classes met three days a week during work time. He arranged to get the time off from defendant but was supposed to make up the time. Plaintiff was in the program for six to nine months. He made up some, but not all of the time he missed from work. Plaintiff reinjured his back in a work-related traffic accident in March 1992. This injury worsened his herniated disc and his pain was more easily aggravated. Plaintiff continued to work following the accident and maintained the light duty restrictions. There is a dispute between the parties as to how many days of work plaintiff missed due to his injuries and his attendance of the get fit program.

At some point in time, Andrew Hogue became defendant's Director of Facilities Management. Plaintiff claims this occurred in February 1992, while defendant maintains that it was in 1991. In June 1992, defendant created a new position, Head of Grounds. There is a dispute as to whether this position was any different than the position in which plaintiff had been working since 1980. Plaintiff contends that it was his same job but with a new title. Defendant argues that the position included plaintiff's duties as well as added responsibilities. Plaintiff applied for but did not get this position. Defendant claims that it did not give the position to plaintiff because he was unable to perform some of the vital functions of the job and that there was concern about plaintiff's work performance. Plaintiff argues that defendant never articulated any reasons for awarding the job to someone with less experience. He adds that he had received a performance review in May 1992 with scores ranging from good to outstanding. Defendant contends that it became unhappy with plaintiff's work performance in the Spring of 1992. It claims that plaintiff was only able to perform twenty percent of his regularly assigned work and he had attendance problems. Plaintiff disputes this.

On July 13, 1992, Mr. Hogue wrote to plaintiff's attending physician inquiring as to plaintiff's restrictions from work. Plaintiff had been under the assumption that his light duty restrictions were temporary pending a full recovery. Plaintiff did not ever fully recover. Plaintiff's doctor removed him from work for two weeks due to his work-related injury. There is an uncertainty as to whether this commenced on July 13, 1992 or July 15, 1992. On July 28, 1992 or August 1, 1992, plaintiff attempted to return to work but Mr. Hogue told plaintiff that he did not get the Head of Grounds position and that he could not return to work until he was free from all work restrictions.

Following Mr. Hogue's decision, plaintiff enrolled in a physical rehabilitation work hardening program, at defendant's expense. Plaintiff claims that his goal was to rehabilitate himself to the point that he could return to work without restrictions. Plaintiff was discharged from the program in January 1993 after reaching maximum medical improvement. On January 13, 1993, plaintiff's doctor wrote to defendant's worker's compensation carrier that plaintiff had plateaued in a relatively light to light-medium duty level and had reached maximum medical improvement. In May 1993, plaintiff called defendant's Assistant Superintendent for Personnel and Planning, Dr. Joseph Ward, and

2. Mr. Heinz is deceased and thus could not be    deposed.

requested a letter to determine his employment status. Dr. Ward responded by sending plaintiff a letter dated May 13, 1993 stating that plaintiff is a "permanently disabled employee," receives no salary, but does participate in a medical insurance plan paid in part by defendant. There is a dispute as to whether plaintiff has ever been terminated by defendant. Defendant maintains that plaintiff remains an employee. Plaintiff argues that he was terminated since defendant's policy is that permanently disabled employees shall be terminated and Dr. Ward's letter effectively terminated him.

Plaintiff argues that defendant has adopted a policy that states that an employee will not be considered temporarily disabled if the employee has exhausted all accumulated sick leave and is continuously absent from work for at least one year or can no longer perform the work for which he or she was employed for at least one year. Defendant contends that this policy is inapplicable to plaintiff and his claims because it was not adopted until August 17, 1995 and therefore could not have been applied to plaintiff.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that

there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

## ANALYSIS

### I. *Timely Filing of EEOC Charge of Discrimination*

Defendant argues in support of its motion for summary judgment that plaintiff did not file his charge of employment discrimination with the EEOC in a timely manner. A charge of discrimination must be filed with the EEOC within 300 days from the day of the alleged discriminatory act. *Lever v. Northwestern Univ.,* 979 F.2d 552, 553 (7th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993). It is undisputed that plaintiff filed his EEOC charge on October 21, 1993. Defendant claims that it made its decision to not let plaintiff continue to work under light duty restrictions and communicated this decision to plaintiff on July 28, 1992 or August 1, 1992. Defendant, therefore, argues that plaintiff's charge is timely only with respect to events that occurred after December 25, 1992, which is within 300 days from the filing of the charge.[3]

Plaintiff responds that he had continued rehabilitation in an attempt to return to work until he learned from his doctor on January 13, 1993 that he had reached a plateau in his rehabilitation. Prior to that, plaintiff maintains that both he and defendant believed that with training, he would eventually be able to return to work. Furthermore, he states that it was not until he received the letter from Dr. Ward on May 13, 1993, which declared his new status as permanently disabled and that he would be terminated, that he learned of any concrete discriminatory action against him.

**3.** Defendant maintains its argument that plaintiff only had 180 days within which to file his charge of discrimination. This court, however, previously held in an opinion dated August 3, 1995, that plaintiff in fact had 300 days in which to file his charge.

A cause of action accrues at the time the adverse employment decision was made and communicated to the employee. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). The focus is upon the time of the discriminatory acts, not when the consequences become most painful. *Id.* What date the decision was made and communicated is a question of fact. *Lever,* 979 F.2d at 553.

Plaintiff argues that Dr. Ward's letter was a determinative change in status because this was the first time that he learned that he was to be classified as permanently disabled by defendant. Defendant maintains that this letter did not set forth any new information or decision by defendant regarding plaintiff's employment status, but rather was merely a confirmation of defendant's previous decision made in August 1992. Plaintiff, however, argues that prior to January 1993, he and defendant were not certain that he would not fully recover from his disability. Plaintiff repeatedly attempted to rehabilitate himself. It was not until January 1993 that his physician informed him that he had plateaued and would remain restricted to light to light-medium levels of work. At that point, plaintiff knew that he would never be able to work at full capacity. Plaintiff then took the initiative to contact defendant to inquire as to the status of his employment. The evidence supports the inference that defendant had not yet made an unequivocal determination about plaintiff's employment. It was not until plaintiff received Dr. Ward's letter in May 1993, informing him that defendant considered him to be permanently disabled, that plaintiff discovered that defendant now classified him as permanently disabled and he would not be able to return to work with defendant given the diagnosis as to his disability.

■ Applying the 300 day time limit to plaintiff's EEOC charge, the discriminatory action must have occurred after December 25, 1992. A question of fact exists as to when defendant made and communicated its final decision to plaintiff. In fact, defendant still maintains that plaintiff is a current employee. Plaintiff argues that Dr. Ward's letter dated May 13, 1993 effectively changed his status. Prior to the letter, there is no evidence that defendant considered plaintiff to be permanently disabled. This court cannot say that no discriminatory act on the part of defendant occurred after December 25, 1992. Dr. Ward's letter may be considered as part of the continuing process of determining plaintiff's status. This issue, therefore, precludes granting summary judgment in favor of defendant.

## II. *ADA Claim*

■ Defendant argues that summary judgment should be granted in its favor because the ADA does not require employers to create light duty positions. Plaintiff bases his ADA claims on the allegation that defendant did not reasonably accommodate his disability. The ADA prohibits employers from discriminating against a qualified individual with a disability because of the disability with respect to job application, hiring, advancement, discharge, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). One type of discrimination claim can be the result of an employer not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). Such discrimination claims are examined under a reasonable accommodation analysis. *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1284 (7th Cir.1996). Plaintiff must show that: (1) he was or is disabled; (2) defendant was aware of his disability; and (3) he was an otherwise qualified individual for his job. *Id.* In order for plaintiff to show that he is an otherwise qualified individual he "must demonstrate that he satisfies the prerequisites for the position, i.e. that he has the proper training, skills, and experience," and that "he could perform the essential functions of [his] job, either with or without reasonable accommodation." *Id.*

■ There is no dispute between the parties that plaintiff was disabled or that defendant was aware of his disability. The primary dispute is whether plaintiff was an otherwise qualified individual for his groundsman job. Turning to this analysis, there is no dispute that plaintiff has the

prerequisites for the job, since he was employed by defendant in the job for several years. *Id.* Defendant argues that plaintiff was not a qualified individual because he could not perform the essential functions of the job, specifically heavy physical labor, snow plowing, and lawn mowing. The ADA, however, states that a qualified individual with a disability is one who, with or without reasonable accommodation, can perform the essential functions of the job. 42 U.S.C. § 12111(8); *Bultemeyer,* 100 F.3d at 1284–85.

Defendant argues that it is not obligated to create a light duty position for plaintiff and cites numerous cases supporting this position. It claims that allowing plaintiff to continue on light duty eliminates essential functions of his job. Defendant adds that plaintiff failed to maintain a regular attendance and therefore he did not fulfill his essential job functions. Furthermore, defendant states that the fact that it placed plaintiff on light duty for a period of time does not mean that it had an obligation to allow plaintiff to remain on light duty permanently.

■ Defendant's argument emphasizes that it is not obligated to create a new position for plaintiff. This argument misses the point of plaintiff's claims. While defendant does not have an obligation to create a light duty position for plaintiff if none is available, this does not mean that defendant does not have a duty to attempt to reasonably accommodate plaintiff. Plaintiff argues that defendant has not reasonably accommodated him. An accommodation means that the employer must be willing to consider making changes in its ordinary work rules, terms, and conditions in order to enable a disabled individual to work. *Beck v. University of Wis. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996). Defendant has not presented any uncontroverted facts that plaintiff cannot perform the essential functions of his job with reasonable accommodation. There is a continuing factual dispute over what exactly are the job requirements of a groundsman. All defendant has presented are unsupported assertions that plaintiff was making mistakes, although his performance reviews contain grades of good to outstanding. Plaintiff continued working for defendant with accommodations and there is evidence that his former supervisor found no problems with his work. Plaintiff has alleged facts which, viewed in the light most favorable to him, present a genuine issue of material fact as to whether he could have performed the essential functions of the job had defendant continued to accommodate him. Whether defendant could have continued to reasonably accommodate plaintiff's disability as it had previously remains an issue of fact.

An employer may not have to reasonably accommodate its employee if to do so would impose an undue hardship on its business. 42 U.S.C. § 12112(b)(5)(A); *Vande Zande v. State of Wis. Dept. of Admin.,* 44 F.3d 538, 542 (7th Cir.1995). Defendant, however, has made no claim that continuing to accommodate plaintiff would constitute an undue hardship on the operation of its business. Defendant has also not shown that there was no other vacant position to which plaintiff could have been reassigned in order to accommodate his disability. 42 U.S.C. § 12111(9)(B). Furthermore, there appears to be a genuine issue of fact as to how many days of work plaintiff actually missed. Thus there is no clear evidence that plaintiff did not or could not regularly attend work. There remain many genuine issues of material fact in dispute in this case, therefore defendant's motion for summary judgment must be denied.

### III. *Per Se Violation of the ADA*

■ Plaintiff argues in support of its motion for summary judgment that defendant engaged in two types of action that were per se violations of the ADA: (1) defendant's adopted policy of dealing with disabled employees; and (2) Mr. Hogue's mandate that plaintiff not return to work until he is entirely free of any work restrictions. Defendant maintains that the policy to which plaintiff refers was not adopted by defendant until August 17, 1995, significantly later than the time to which plaintiff's complaint refers. Plaintiff submitted a copy of the policy with his motion. Indeed, at the top of the policy it says that it was adopted on August 17,

1995. Therefore, there is no evidence that plaintiff was affected by this policy. Plaintiff responds that he is currently an employee of defendant and therefore the policy relates to him and he may argue that the policy violates the ADA. This court notes that plaintiff curiously appears to argue at some points that he is still an employee of defendant and in other places that he was terminated by defendant. There is a genuine issue of fact remaining as to whether or not plaintiff is still an employee of defendant. Furthermore, plaintiff makes no mention of the policy anywhere in his complaint. Within his brief in support of his motion for summary judgment is the first time that he mentions the policy. This argument cannot support a motion for summary judgment. Therefore, plaintiff's motion for summary judgment on this point must be denied.

■ Plaintiff next argues that Mr. Hogue's statements to him on either July 28, 1992 or August 1, 1992, that required him not to return to work unless he was free from any work restrictions, were per se violations of the ADA. A per se violation is one in which an individual assessment of an individual's ability to perform the essential functions of the person's job with or without accommodation is not made by the employer. *Hutchinson v. United Parcel Serv., Inc.,* 883 F.Supp. 379, 397 (N.D.Iowa 1995). Defendant first responds that Mr. Hogue was not telling plaintiff that it refused to accommodate his disability. Defendant claims that it believed that plaintiff could no longer perform the essential functions of his job and thus would not let him continue since it did not have any other light duty position available. Thus, there is a question of fact as to whether defendant was making a blanket policy that all disabled employees could not work for it or whether it was only stating its position with respect to plaintiff after assessing his capabilities. Furthermore, there is a genuine question of fact regarding whether or not plaintiff was capable of performing the essential functions of his job either with or without reasonable accommodation. Therefore, this court cannot say as a matter of law that defendant committed a per se violation of the ADA. Accordingly, plaintiff's motion for summary judgment must be denied at this time.

*CONCLUSION*

Based on the above stated reasons, both defendant's motion for summary judgment and plaintiff's motion for summary judgment are DENIED. The parties are strongly urged to discuss the settlement of this case. This case is set for report on status at 10:00 a.m. on February 4, 1997.